**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TAVIA MILBURN,<br><br>Plaintiff,<br><br>v.<br><br>PDD HOLDINGS, INC., a Cayman Islands Corporation, WHALECO, INC., a Delaware Corporation, and DOES 1-10,<br><br>Defendants. | Case No. 1:23-cv-04785<br><br>Hon. Sharon Johnson Coleman<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' OPPOSED MOTION TO STAY DISCOVERY**

Whaleco, Inc. ("**Whaleco**") and PDD Holdings, Inc. ("**PDD**") move to stay discovery for five related cases currently before the Court[1] (the "**Related Cases**") pending disposition of Whaleco's fully dispositive motions for summary judgment in all five cases and PDD's motion to dismiss for lack of personal jurisdiction.[2]

*First*, a stay of discovery is warranted pending dispositions of these fully dispositive motions. Regarding PDD, it filed a motion to dismiss for lack of personal jurisdiction. Dkt. No. 24. As explained in the pending motion, PDD is a holding parent company of Whaleco. Dkt. No. 26, ¶ 4, 11. PDD has no presence in the U.S. or Illinois, does not operate the Temu platform

[1] *Ilustrata Servicos Design, Ltda. v. PDD Holdings, Inc. et al*, No. 1:23-cv-04824 (N.D. Ill. July 25, 2023) ("***Ilustrata***"); *Lord v. PDD Holdings, Inc. et al*, No. 1:23-cv-04729 (N.D. Ill. July 21, 2023) ("***Lord***"); *Milburn v. PDD Holdings, Inc. et al*, No. 1:23-cv-04785 (N.D. Ill. July 24, 2023) ("***Milburn***"); *Trinidad v. PDD Holdings, Inc. et al*, No. 1:23-cv-04786 (N.D. Ill. July 24, 2023) ("***Trinidad***"); *Wang v. PDD Holdings, Inc. et al*, No. 1:23-cv-04760 (N.D. Ill. July 24, 2023) ("***Wang***").

[2] For avoidance of doubt, PDD joins in this motion subject to its personal jurisdiction defense. PDD's request to stay discovery pending resolution of the motion to dismiss does not constitute assent to the Court's personal jurisdiction or waiver of its defense.

in the U.S., does not have any employees and lacks any relevant records, documents, or evidence relevant to the issues in the Related Cases. *Id*. at ¶¶ 3-9.

Regarding the claims against Defendant Whaleco, the pending motions for summary judgment include all the information and documents necessary to dispose of the cases. Whaleco operates the Temu marketplace platform and acts as a service provider for ***third-party*** merchants who sell on the platform. Whaleco moved for summary judgment as a classic service provider covered by the safe harbor of the Digital Millennium Copyright Act ("**DMCA**"). Each of the Plaintiffs sued over a single DMCA takedown notice. And despite deficiencies in the takedown notices, Whaleco expeditiously took down the allegedly infringing listings created by third-party sellers. Notably, in four out of five cases, the third-party sellers sold between *zero and two* units total of the accused products on Temu. There is no evidence of any ongoing harm (e.g., no live listings or any outstanding takedown requests), no involvement of Whaleco in posting the allegedly infringing listings, and no commercial reason to pursue the cases.

But the entity behind these five proxy litigations sheds light into why these cases were brought and why they are still pending. In each of the five cases, the DMCA notice was sent on the Plaintiff's behalf by the ultra-fast fashion giant Shein. Shein views Temu as its largest competitor and existential threat. In all but one of the cases, Shein registered copyrights on the Plaintiff's behalf. The motivation of the puppeteer Shein is clear: it is not to address any intellectual property violation or commercial injury (none exist), but to embark on an improper, unnecessary, and intrusive discovery into Temu's business operations and gain access to Temu's proprietary information.

*Second*, a brief stay of discovery will not unduly prejudice or tactically disadvantage the Plaintiffs in the Related Cases, further warranting a stay under well-established case law. Any

business records and witnesses may be made available if and when the stay is lifted. Nor is there any ongoing harm or emergency—Whaleco has long ago removed the complained-of third-party content from its website in compliance with the DMCA. By contrast, if the stay is denied, prejudice and costs to Defendants and unnecessary burden on the Court will be significant and unjustified. Faced with the summary judgment motions, the Plaintiffs in the Related Cases rushed to serve a slew of deposition notices, discovery requests, and correspondence about purported discovery "deficiencies." ***None***, as detailed below, identify or genuinely seek any missing information for the pending summary judgment motions. Notably, although the motions for summary judgment were filed two weeks ago, Plaintiffs have not filed a motion for any discovery needed to respond to the motions under Federal Rule of Civil Procedure 56(d). This is because no such grounds exist, and Plaintiffs are attempting to disguise overbroad and improper discovery as "summary judgment" discovery.

Unless curtailed, Shein (through proxies) will continue to abuse the legal process with these manufactured litigations to harm Temu and interfere with Temu's relationships with its sellers. Notably, Shein's fraudulent DMCA campaign against Temu and anti-competitive practices are now the subject of a separate lawsuit by Temu. *See Whaleco, Inc. v. Shein Tech. LLC*, 1:23-cv-03706-TJK (D.D.C. Dec. 13, 2023). If a company like Shein, or its proxies for that matter, were allowed to harass a competitor with broad, disproportional discovery, that would render the DMCA safe harbor provisions toothless. Every service provider would be forced to go through months of intrusive, unnecessary, and cost-prohibitive discovery even though case-dispositive motions are pending. Because the pending motions are likely to dispose of the cases, no additional discovery is needed for the pending motions, and no prejudice exists, a stay should be granted.

## BACKGROUND

Whaleco operates the Temu marketplace platform in the U.S. through which third-party sellers sell an extensive range of products to U.S. consumers. Plaintiff Tavia Milburn is an artist and a purported Shein licensor. Plaintiff filed this case alleging a claim of direct copyright infringement by Whaleco. Within days, the other four proxy Related Cases were filed before this Court.

PDD, a holding company and Whaleco's parent, filed a motion to dismiss for lack of personal jurisdiction in each of the Related Cases, and that motion is fully briefed. Whaleco filed a motion for summary judgment in each of the Related Cases. In support of its motion, Whaleco relied on detailed declarations and exhibits providing all the information/documents needed to resolve the motions. The chart below summarizes the elements of the DMCA defense, and the evidence relied on by Whaleco:

| DMCA Safe Harbor Requirements | Evidence Submitted |
|---|---|
| 512(c)(1): The defendant must establish that it is a service provider under the statute. | 17 U.S.C. § 512(k)(1)(B) defines "service provider" as "a provider of online services or network access, or the operator of facilities therefor." The Court may take judicial notice of this definition under Rule 201 of the Federal Rules of Evidence.<br>As a platform offering an online marketplace for third-party sellers, Whaleco qualifies as a service provider.<br>*See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1099-1100 (W.D. Wash. 2004) (finding Amazon's provision of retail and third-party selling services to Internet users and maintenance of computers to govern access to its websites "fall squarely within the broad scope of the § 512(k)(1)(B) definition of 'service provider.'").<br>*In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 658 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003) ("A plain reading of both definitions reveals that 'service provider' is defined so broadly that we have trouble imagining the existence of an online service that *would not* fall under the definitions, particularly the second.") (emphasis in original). |
| 512(i)(1)(A)-(B): The service provider must have adopted and | Whaleco submitted the Declaration of Zhu Ji ("**Ji Decl.**") that describes Temu's takedown procedures and repeat infringer policy, namely Temu's right to terminate a seller's account, store, and the |

| | |
|---|---|
| reasonably implemented a copyright infringement policy that provides for the termination of repeat infringers and must accommodate and not interfere with standard technical measures. | Seller Service Agreement ("**SSA**") should the seller breach its terms or the seller's representations and warranties (including Temu's prohibition on any infringing and counterfeit content on the platform). Dkt. No. 43-1 at ¶ 5. Whaleco also submitted the SSA containing this provision as Exhibit 1 to the Declaration of Jinhao Yu ("**Yu Decl.**"). Dkt. No. 43-2.<br>*See Kinsley v. Udemy, Inc.*, No. 19-cv-04334-JSC, 2021 U.S. Dist. LEXIS 62885, at *7-8 (N.D. Cal. Mar. 31, 2021) (Having a policy that includes protective measures to stop infringing activity is evidence that a service provider does not interfere with "standard technical measures"). |
| 512(c)(1)(A): The service provider did not have actual or apparent knowledge of the alleged infringement until it received the DMCA notice from Plaintiff. | Whaleco was not aware of the accused product listing until it received the March 29, 2023 DMCA notice. Dkt. No. 42 at 11.<br>*See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1023 (9th Cir. 2013) (finding no genuine issues of material fact in part because "general knowledge that [the service provider] hosted copyrightable material and that its services could be used for infringement is insufficient to constitute a red flag"); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 510 (S.D.N.Y. 2008), *aff'd in part*, 600 F.3d 93 (2d Cir. 2010) ("[I]t therefore cannot be said that generalized knowledge of counterfeiting is sufficient to impute knowledge to eBay of any specific acts of actual infringement."). |
| 512(c)(1)(B): The service provider either does not have the right and ability to control the infringing activity, or—if it does—it does not receive a financial benefit directly attributable to the infringing activity. | Whaleco submitted the Yu Decl. and attached as exhibits the SSA, Notice for Using the Material Editing Tools, and Terms of Use, all of which outline the operations of the Temu platform and seller responsibilities and obligations for listing and selling on Temu. Dkt. No. 43-2, Exs. 1-3. As detailed in the motion and supporting declarations, under well-accepted case law and industry standards, Temu's marketplace model qualifies for DMCA safe harbor immunity.<br>*See Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13- 1932RSM, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16, 2015) (granting summary judgment for Amazon and rejecting contention that Amazon is liable for trademark infringement based on its sales and shipment of physical items in part because, like here, third-party sellers retain full title to and ownership of the inventory sold by the third party and plaintiffs provided no evidence to the contrary); *Corbis Corp.*, 351 F. Supp. 2d 1090 (finding on summary judgment that Amazon satisfied the threshold conditions for DMCA protection and all of the requirements for protection under the § 512(c) safe harbor where, like here, there is no indication that Amazon intended to select infringing material for its site, does not edit the product descriptions, or, other than its marketplace services, does not involve itself in the sale). |
| 512(c)(1)(C): The service provider acted expeditiously to remove the accused | As stated in Whaleco's opening brief (*see* Dkt. No. 42 at 11-12) and Ji Decl. (*see* Dkt. No. 43-1 at ¶ 9), Whaleco expeditiously removed the accused product listing after receiving the notice. The Ji Declaration and accompanying Exhibit 2 provide detail regarding the expeditious |

| | |
|---|---|
| material after receiving the DMCA notice. | nature of the March 29, 2023 takedown notice under well-established case law. *See Avdeef v. Google, Inc.*, 2015 U.S. Dist. LEXIS 113496, at *1, 6-9 (N.D. Tex. Aug. 26, 2015) (finding on summary judgment that 14 days to remove a single work is expeditious); *Seide v. Level-(1) Glob. Sols., LLC*, No. 16 C 2975, 2016 U.S. Dist. LEXIS 105375, at *15 n.5 (N.D. Ill. Aug. 10, 2016) (noting on a motion to dismiss that "five days sounds rather expeditious to the court, and the case law on the issue seems to agree") |
| 512(c)(2): The service provider has designated an agent to receive statutorily compliant notices of claimed infringement. | Whaleco submitted the Ji Decl. and Declaration of Thomas Cull ("**Cull Decl.**"), both of which detail the information for Whaleco's DMCA agent designated with the United States Copyright Office. Dkt. Nos. 43-1, 43-3. Exhibit 1 to the Cull Decl. is a copy of the "Service Provider/Designation Agent Information" displayed for Whaleco, Inc. on the DMCA Designated Agent Directory. Dkt. No. 43-3, Ex. 1. That fact is also a matter of public record, which the Court may take judicial notice of under Rule 201 of the Federal Rules of Civil Procedure. |

Further, Whaleco has provided responses to Plaintiff's First Set of Interrogatories in each of the Related Cases detailing the meager sales of the allegedly infringing products (in two out of five cases, there were *zero* sales of accused products), identifying the third-party sellers that offered the allegedly infringing products for sale, describing Temu's platform operations, and providing details surrounding the purported DMCA notices sent to Temu by Shein (which should be in each Plaintiff's possession already). *See* Declaration of Anna Naydonov ("Naydonov Decl.") at ¶ 2.

Counsel for Whaleco contacted Plaintiff's counsel (in separate correspondence for each of the Related Cases) and stated Whaleco's intent to file a motion to stay general discovery pending resolution of the motions for summary judgment. *Id.* at ¶¶ 4, 9. Plaintiff's counsel responded on behalf of all Plaintiffs that they would oppose stay. *Id.* at ¶¶ 5, 9. In the week that followed, each Plaintiff served four deposition notices (twenty in total), including Federal Rule of Civil Procedure 30(b)(6) deposition notices seeking testimony that is overbroad and unnecessary for the resolution of Whaleco's motions. *Id.* at ¶ 6, Ex. 3. Each Plaintiff also served additional sets of Interrogatories and Requests for Production: some reflexively seek "all documents" relating to the various undisputed facts asserted (and sufficient supporting evidence already provided) in Whaleco's

motions for summary judgment. *Id.* at ¶ 7, Ex. 4. Numerous other requests are overbroad and irrelevant to the summary judgment motions. Plaintiff has not shown how the additional discovery it seeks is different from the testimony and evidence Whaleco already submitted in support of its motions for summary judgment, nor why it is necessary for any opposition to the motions.

Plaintiffs[3] also sent a letter claiming discovery "deficiencies" in the existing discovery responses. *Id.* at ¶ 8. But as Defendants will detail in their response to the letter, the so-called "deficiencies" call for documents already in Plaintiffs' possession (including exhibits submitted with Whaleco's motions for summary judgment), irrelevant to the pending motions for summary judgment, or seek jurisdictional discovery not granted by the Court. For example, Plaintiff's Request for Production No. 4 seeks "All Documents relating to Communications between you and Plaintiff." *Id.* at Ex. 2. This request is overbroad and seeks documents already in Plaintiff's possession. Interrogatory No. 12 requests that Whaleco "State the basis for your DMCA safe harbor defense. *See* Answer at 21 ('Second Affirmative Defense')." *Id.* at Ex. 1. But Whaleco did just that in its motion for summary judgment and supporting documents. *See* Dkt. Nos. 42 at 8-15, 43-1, 43-2, and 43-3. In sum, Plaintiff has not and cannot specify what additional information it needs to oppose the pending motions.

## LEGAL STANDARD

District courts enjoy broad discretion to manage discovery and issue stays where appropriate. Fed. R. Civ. P. 26. When deciding whether to stay discovery, courts consider three factors: (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (ii) whether the stay will simplify the issues in question and streamline trial; and (iii) whether a stay will reduce the burden of litigation on the parties and on the Court. *See Berry Plastics Corp.*

[3] A single deficiency letter was sent on behalf of all Plaintiffs in the Related Cases.

*v. Ill. Nat'l Ins. Co.*, No. 3:15-cv-00170-RLY-MPB, 2017 U.S. Dist. LEXIS 221286, at *4 (S.D. Ind. Jan. 20, 2017). Stays of discovery are "often appropriate" where a pending dispositive motion can resolve an ongoing case and discovery is unlikely to produce facts necessary to defeat the motion. *Id.*; *see also Sprague v. Brook*, 149 F.R.D. 575, 577 (N.D. Ill. 1993); *Liggins v. Reicks*, No. 3:19-cv-50303, 2021 U.S. Dist. LEXIS 127302, at *3 (N.D. Ill. July 8, 2021) (quoting *Dsm Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 U.S. Dist. LEXIS 87473, at *5 (N.D. Ill. Oct. 28, 2008) ("Stays are often deemed appropriate where the motion to dismiss can resolve a threshold issue…or where…discovery may be especially burdensome and costly to the parties.")).

A party opposing a motion to stay must make specific requests for additional discovery and show that such requests would generate facts essential to justify the opposition. *See United States v. Miller*, No. 3:14-CV-1696-RLM-CAN, 2015 U.S. Dist. LEXIS 176514, at *3-4, *6 (N.D. Ind. Nov. 3, 2015) (granting a motion to stay general discovery and denying a request for limited discovery where "Defendant has not shown with specificity that the Outstanding Discovery Requests would generate facts essential to justify opposition to Plaintiff's motion for summary judgment").

## ARGUMENT

### A. A Stay Will Not Unduly Prejudice or Tactically Disadvantage Plaintiff

The general prejudice of having to wait for resolution of a motion is insufficient to establish prejudice or disadvantage from a stay of discovery. *See Medline Indus. v. C.R. Bard, Inc.*, No. 17 C 7216, 2019 U.S. Dist. LEXIS 154346, at *5 (N.D. Ill. Sep. 10, 2019); *Calderon v. P&G*, No. 22-cv-3326, 2022 U.S. Dist. LEXIS 245944, at *3 (N.D. Ill. Oct. 6, 2022) (granting defendant's motion to stay where "[p]laintiff articulates no specific prejudice"; "the 'general prejudice of having to wait for resolution'" is insufficient). A stay of discovery may unduly prejudice or

tactically disadvantage a party where a plaintiff has moved for emergency relief or when documents would be lost or witnesses unavailable due to the stay, but that is not the case here.

Whaleco removed the handful of accused third-party listings from its platform expeditiously following the takedown requests, and Plaintiff has not asserted any other instances of alleged infringement. *See* Dkt. 42 at 11-12. Not surprisingly, Plaintiff has not moved for a preliminary injunction or any type of emergency relief. *See Medline Indus.*, 2019 U.S. Dist. LEXIS 154346, at *6 (granting motion to stay where plaintiff did not seek a preliminary injunction, "which further indicates that a delay at this stage would not prejudice [plaintiff] significantly"). Further, Whaleco is a corporate entity that maintains records in the regular course of business and has taken all the customary steps to preserve evidence during litigation. Thus, no risk exists that documents would be lost. *See Sadler v. Retail Props. of Am.*, No. 12 C 5882, 2013 U.S. Dist. LEXIS 206567, at *8-9 (N.D. Ill. Sep. 27, 2013) (granting stay will not unduly prejudice or tactically disadvantage Plaintiffs because "the documents asked for are usually maintained by corporate entities such as the Defendants in the ordinary course of business" and they may obtain the documents at a later date). Additionally, all documents necessary to resolve these disputes have been provided with the pending motions for summary judgment and/or in corresponding discovery responses. *See supra* pp. 4-6.

Finally, a stay would not cause witnesses to become unavailable, nor is the general possibility of witness unavailability reason to deny a stay. *See Ankcorn v. Kohl's Corp.*, No. 15-cv-1303, 2017 U.S. Dist. LEXIS 12149, at *12 (N.D. Ill. Jan. 30, 2017) (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014)) ("It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify

a conclusion of undue prejudice."). The DMCA notice in this case was sent to Whaleco in March 2023. *See* Dkt. No. 1 at ¶ 37. Given the recency of the events alleged in the Complaint, no practical risk exists that witnesses will become unavailable. And Plaintiff has not and cannot make such a showing.

**B. The Pending Motions Are Dispositive and Require No Additional Discovery**

Next, courts consider whether a stay will simplify the issues in question or streamline trial. This factor weighs strongly in favor of staying discovery when issues raised in a motion for summary judgment or motion to dismiss could be dispositive. *See Rodriguez v. Ford Motor Co.*, No. 21 C 2553, 2022 U.S. Dist. LEXIS 41641, at *3 (N.D. Ill. Mar. 9, 2022) ("the fact that the issues raised could potentially be dispositive weighs in favor of staying discovery."); *Calderon,* 2022 U.S. Dist. LEXIS 245944, at *4 ("[I]n considering a request to stay, the Court considers the fact that Defendant's arguments may be dispositive, rendering discovery unnecessary or at least narrowing its scope.").

Here, PDD's motion to dismiss should dispose of any claims against PDD. Indeed, PDD has shown that it is not subject to personal jurisdiction in Illinois because it is the holding parent company of Whaleco. It does not operate the Temu platform; has no employees and no relevant records; and has thus has not engaged in any conduct related to any of the alleged claims in the case. *See* Dkt. No. 26 at ¶¶ 3-9.

Regarding Whaleco, the pending summary judgment motions are also fully dispositive and do not require any further discovery. Whaleco has moved for summary judgment on Plaintiff's claim for direct copyright infringement—the only cause of action asserted against it. As explained in Whaleco's memorandum, Plaintiff's claims fail as a matter of law. For direct copyright infringement, a plaintiff must establish that the defendant copied elements of the copyrighted

material. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991). Plaintiff has neither alleged nor shown that Whaleco engaged in copying any of Plaintiff's copyrighted materials. At most, Plaintiff claims that ***third-party sellers*** may have copied the copyrighted work and posted listings on the Temu platform. *See* Dkt. No. 1 ¶¶ 5, 32. Activities by third-party sellers on the Temu platform cannot give rise to a direct copyright infringement claim against a service provider like Whaleco as a matter of law. *See Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 U.S. Dist. LEXIS 164627, at *6-10 (N.D. Ill. Dec. 8, 2015) (dismissing a claim for direct copyright infringement against Amazon where the plaintiff did not allege Amazon itself, rather than third parties using Amazon's site, had copied copyrighted works). No additional discovery is needed to decide this issue and grant summary judgment in Whaleco's favor on this basis alone.

Separately, Whaleco is also entitled to summary judgment under the safe harbor provision of the DMCA, 17 U.S.C. § 512(c), and no additional discovery is necessary on this issue either. Whaleco has either already provided in discovery (including interrogatory responses) and/or included in or with the detailed declarations in support of the summary judgment motions all the information and evidence necessary to rule on the dispositive motions. The purpose of DMCA safe harbors would be eviscerated if Defendants were required to participate in extensive discovery despite following the statutory procedures for takedowns of third-party content. That is especially so where, like here, the third-party sales on the platform are non-existent or minimal, and the discovery is sought for an ulterior motive by a competitor.

Yet, in an attempt to manufacture discovery issues and stave off summary judgment, Plaintiff served extensive requests for production, interrogatories, and deposition notices on December 12 and 13—shortly after Whaleco filed its motion. Those requests and deposition notices further demonstrate the need for a stay.

For Plaintiff's newly served discovery requests, the requested documents and information fall into one of two categories. The first category consists of overbroad and grossly disproportionate requests that are nothing more than a thinly veiled attempt by Shein (through its proxies) to abuse the litigation process and obtain intrusive discovery into Temu's commercially valuable business practices and confidential trade secrets. The second category consists of requests that are simply designed to prolong these proceedings by erroneously suggesting that additional burdensome discovery is required before the Court may rule on Whaleco's motion. But those requests seek documents that either have already been provided or that simply do not exist.

Regarding the first category, Plaintiff seeks commercially sensitive information into Temu's confidential business practices which, if disclosed, would irreparably harm Temu's competitive advantage in the marketplace, including against Shein. Importantly, in four of the five Related Cases, between zero and two units of allegedly infringing products were sold by third parties on the Temu platform. And Temu has provided all the evidence necessary to resolve the limited issues before the Court on summary judgment. Nevertheless, Plaintiff has requested vast categories of sensitive documents and information. For example, Plaintiff seeks "**[a]ll** documents **relating to** the 'marketplace services' that Temu provides sellers on its platform, including any manufacturing, production, sourcing, logistics, shipping, or fulfillment services Temu provides such sellers." Naydonov Decl. at Ex. 4, No. 60. As written, this request seeks every document and communication that is related to Temu's services in any way, including internal communications, trade secrets, and other sensitive information that are untethered to Plaintiff's claims. Plaintiff has no credible reason to obtain such broad and intrusive discovery to respond to a straightforward DMCA safe harbor summary judgment motion where the few third-party listings (most of which have generated no sales) were promptly taken down. Rather, Shein is using these

proxy litigations as a fishing expedition into Temu's entire business operations. This is not surprising because, as detailed in Temu's separate lawsuit, Shein has recently resorted to seller detentions and illegal hacking into seller accounts to obtain access to Temu's trade secret and other commercially sensitive financial and other information. *See Whaleco, Inc.*, 1:23-cv-03706-TJK.

For the second category, Plaintiff requests documents that have already been produced or do not exist. Plaintiff served these requests to defeat Whaleco's motion for a stay by giving the false impression that there are outstanding requests and ongoing disputes between the parties.[4] By way of example, Plaintiff contends that Whaleco must produce "[a]ll Documents relating to your knowledge or awareness of Plaintiff and/or the Works, including, but not limited to, all Documents showing how and when you became aware of or obtained access to Plaintiff and/or the Works." Naydonov Decl. at Ex. 2, No. 19. Whaleco already explained in its motion for summary judgment and interrogatory responses that it became aware of the work upon receipt of the DMCA notice. Plaintiff's request essentially seeks the DMCA notices that were sent to Temu on their behalf and were provided with the summary judgment motions. Plaintiffs also contend in their letter that Whaleco must respond to a written interrogatory seeking the basis for Whaleco's DMCA safe harbor defense, despite Whaleco having filed a 15-page motion explaining the basis for the defense and attaching the relevant documents. *See* Dkt. Nos. 42, 43-1, 43-2, and 43-3. Plaintiff also seeks documents that simply do not exist, including, for example, "[a]ll Documents relating to the conception, development, and creation of the Infringing Products and any images thereof on Temu's website or mobile application." Naydonov Decl. at Ex. 2, No. 9. Again, as a service provider and platform, Whaleco does not possess documents responsive to these and other similar

---

[4] Plaintiff served these requests on December 13, 2023, just days after Whaleco's counsel asked if they would consent to a stay.

requests and Whaleco's motion for summary judgment and discovery responses make that clear.

Plaintiff also served four deposition notices, including a 30(b)(6) notice to both PDD and Whaleco. *Id*. at Ex. 3. Like its discovery requests, Plaintiff's 52 topics under Rule 30(b)(6) were crafted to give an illusion that extensive discovery is necessary when it is not. For example, Plaintiff intends to question Whaleco's corporate representative on "details surrounding Whaleco's designation and publication of its DMCA agent." *Id*. No "details" are necessary to establish that Whaleco has properly designated a DMCA agent on its website and with the United States Copyright Office.

Plaintiffs' letter regarding purported discovery "deficiencies" fares no better. As Defendants will detail in their response to the letter, the so-called deficiencies either call for documents/information that have already been provided (e.g., DMCA notices attached to the summary judgment motions); do not exist (e.g., as a platform for third-party sellers, Whaleco does not have documents regarding conception or design of the allegedly infringing third-party products because Whaleco did not design or make those products); are irrelevant to the pending motions (e.g., the request calling for "[d]ocuments sufficient to identify each price at which the Infringing Products were or are expected to be used, sold, licensed, or otherwise exploited" is irrelevant to the DMCA safe harbor defense at issue in the summary judgment motion; and, in any event, Plaintiffs know that no responsive documents exist because Whaleco has repeatedly explained that it is a marketplace that does not sell or license any products). In short, if Plaintiffs believe they are entitled to certain specific and identifiable discovery to respond to Whaleco's motions, a Federal Rule of Civil Procedure 56(d) motion is the proper vehicle. Instead, Plaintiffs seek to conduct expensive and overbroad discovery, which will result in significant prejudice to Whaleco and a waste of time and resources for the Court. This only further underscores the need for a

temporary stay. *See Sadler*, 2013 U.S. Dist. LEXIS 206567, at *8.

**C. A Stay Will Reduce the Burden of Litigation on the Parties and the Court.**

Finally, courts consider whether a stay might reduce the burden of litigation on both the parties and the Court. This factor weighs in favor of a stay when discovery would be expensive, onerous, and time-consuming. *See Sadler*, 2013 U.S. Dist. LEXIS 206567, at *8 (granting a stay where "the broad scope of discovery sought by the Plaintiffs would be both onerous and costly" and "[a]ny ruling in the Defendants' favor on any of the various counts against them . . . could greatly affect the course and scope of discovery taken").

As detailed above, Plaintiff's recent 32 total discovery requests, 52 total deposition topics, and a plethora of manufactured discovery "deficiencies," confirm the burden the Related Cases will needlessly impose absent a temporary stay. Plaintiff is trying to shoehorn broad, general discovery under the guise of limited discovery.[5]

Conversely, Plaintiff suffers no prejudice as Plaintiff can serve additional discovery requests or depose witnesses if the stay is lifted. *See Blake v. Fin. Mgmt. Sys.*, No. 11 C 612, 2011 U.S. Dist. LEXIS 158847, at *4 (N.D. Ill. Sep. 19, 2011) (stay "will not materially prejudice Plaintiff and will . . . benefit the efficient and economical management" of the action).

## <u>CONCLUSION</u>

Defendants respectfully requests that the Court stay discovery until the resolution of Defendants' fully dispositive pending motions.[6]

---

[5] Not only are the discovery requests overbroad, onerous, and unnecessary but Plaintiff has also signaled Plaintiff's intent to depose each of Defendants' witnesses a *second* time after purported "limited" discovery closes and "general" discovery begins. *See* Naydonov Decl. at Ex. 3.

[6] Subject to the requested stay, Defendants request that the Court align the case schedule deadlines and enter uniform amended scheduling orders for the Related Cases. Plaintiff opposes stay but has agreed to the request to align the case schedules, and the parties intend to file a joint motion requesting that the Court enter uniform scheduling orders.

Dated: December 20, 2023

Respectfully Submitted,

*<u>/s/ Anna Naydonov</u>*
Anna B. Naydonov (*Pro Hac Vice* pending)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202)-626-3600
Anna.Naydonov@whitecase.com

Thomas M. Cull (Illinois Bar No. 6331606)
WHITE & CASE LLP
111 S. Wacker Dr.
Suite 5100
Chicago, IL 60606
(773) 330-9427
Thomas.Cull@whitecase.com

Garret A. Leach
Brian A. Verbus
Sarah M. Craig
Xaviere N. Giroud
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
garret.leach@kirkland.com
brian.verbus@kirkland.com
sarah.craig@kirkland.com
xaviere.giroud@kirkland.com

*Counsel for Defendants Whaleco, Inc. and PDD Holdings, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2023, a copy of Defendants' *Memorandum of Law in Support of Defendants' Opposed Motion to Stay Discovery* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Anna Naydonov*
Anna Naydonov