**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TAVIA MILBURN,<br><br>Plaintiff,<br><br>v.<br><br>PDD HOLDINGS, INC., a Cayman Islands Corporation, WHALECO, INC., a Delaware Corporation, and DOES 1-10,<br><br>Defendants. | Case No. 1:23-cv-04785<br><br>Hon. Sharon Johnson Coleman<br><br>JURY TRIAL DEMANDED |

**DEFENDANT WHALECO'S OPPOSITION TO**
**PLAINTIFF'S RULE 56(d) MOTION TO TAKE DISCOVERY**

This is a copyright action in which the accused product was only sold twice and where Whaleco, the operator of the Temu platform, promptly disabled the third-party listing pursuant to its policy when they were brought to Whaleco's attention, resulting in no harm to Plaintiff. As Whaleco's responses to Plaintiff's initial round of discovery in this case and its summary judgment motion make clear, Plaintiff's claim against Whaleco—a single claim for direct copyright infringement—is appropriate for summary judgment on two simple grounds. First, Plaintiff cannot establish that Whaleco itself copied the claimed work, or otherwise deliberately and actively participated in the allegedly infringing conduct, because the undisputed facts show that third-party sellers listed the accused product for sale on the Temu platform. No discovery will change these facts, and Plaintiff's request to investigate Whaleco's purported "involvement in the creation" of the product listing fails under Rule 56(d) because Plaintiff cannot show any basis for believing such facts exist—indeed, Plaintiff fails to mention that Whaleco's interrogatory responses confirmed that it had no involvement in the design or development of the accused product.

The second, independent ground for summary judgment is Whaleco's entitlement to "safe harbor" immunity under the Digital Millennium Copyright Act ("DMCA"). While this basis for summary judgment requires some additional, limited facts to establish the threshold DMCA elements—all provided in Whaleco's summary judgment motion and prior discovery—they are straightforward and not subject to dispute. Plaintiff does not actually provide any basis for disputing, for example, that Whaleco has implemented a compliant notice and takedown procedure—indeed, a policy that resulted in the prompt takedown of the accused listing. Rather, Plaintiff asks for broad discovery and depositions (on dozens of topics) to generally test these indisputable facts. But that does not satisfy Rule 56(d). To stall an otherwise viable summary judgment motion, Rule 56(d) requires the party to show that there is actually relevant evidence to

obtain that could defeat summary judgment, beyond simply speculating that the declarants are not credible or hoping that broad discovery will unearth something capable of reviving Plaintiff's claims. Plaintiff has not made that showing here.

## I. THE RELEVANT BACKGROUND

Whaleco is a service provider that operates Temu.com, an online marketplace platform that allows unaffiliated third parties to list and sell their products on the platform and operate independent storefronts. Whaleco does not—nor has it ever—sold goods on Temu. ECF No. 43 at ¶ 3. Defendant PDD Holdings is Whaleco's parent and a holding company.[1] Plaintiff Tavia Milburn alleges she is an artist and a participant in the SHEIN X incubator program, which purports to support artists working with Shein. ECF No. 1 at ¶ 23. With the help of Shein, Plaintiff allegedly obtained a copyright on a 2-dimensional artwork, with a registration date of April 3, 2023. ECF No. 42 at 5. On March 29, 2023, Temu received a DMCA takedown request from Shein seeking removal of various third-party seller product listings, including one allegedly based on Milburn's Work. *Id.* Temu promptly removed the product listings by April 4, 2023. *Id.* Only two units of product from the accused listing related to Plaintiff's work were sold on Temu. ECF No. 43 at ¶ 33. On July 24, 2023, Plaintiff filed this lawsuit, asserting direct copyright infringement against Whaleco. ECF No. 1 at ¶¶ 44–51.

### A. Whaleco's Motion for Summary Judgement

After engaging in initial rounds of written discovery, on December 4, 2023, Whaleco moved for summary judgment on two grounds. First, Plaintiff's direct copyright infringement claim against Whaleco fails as a matter of law. A critical element of direct copyright infringement is that defendant *itself* engaged in copying the alleged work, not third parties using the defendant's

[1] PDD has not moved for summary judgment and is therefore irrelevant for the purposes of Plaintiff's Rule 56(d) motion. PDD moved to dismiss for lack of personal jurisdiction, which is fully briefed.

site. ECF No. 42 at 8. Here, it is undisputed that the allegedly infringing listing was not posted by—and the product was not made or sold by—Whaleco. *See* ECF No. 43 at ¶¶ 3-5, 20.

Second, and independent of the first ground, Whaleco also moved for summary judgment because it is a classic service provider covered by the safe harbor of the DMCA. Whaleco submitted indisputable declarations and exhibits establishing entitlement to such immunity. In particular, Whaleco established: (1) Whaleco is a "service provider" under the DMCA, defined as "a provider of online services or network access, or the operator of facilities therefor;" (2) implementation of a takedown and repeat infringer policy, namely Temu's right to terminate a seller's account, store, and the Seller Service Agreement ("SSA") if the seller breaches the terms (including Temu's prohibition on any infringing and counterfeit content on the platform); (3) Whaleco's lack of prior knowledge of the alleged infringement of Plaintiff's copyrighted work and prompt takedown of the listing once it was brought to Whaleco's attention; (4) Whaleco's lack of control over any infringing activity, and conversely, that it is the third-party seller's responsibility and obligation under the relevant terms and contracts for listing and selling products on Temu; and (5) Whaleco has a designated agent to receive statutorily compliant DMCA notices. *See* ECF No. 42 at 8–15.

Indeed, this process played out exactly as it was designed to: a third-party seller listed the accused product on Temu; Whaleco was unaware of any infringement concern; Shein (the alleged licensee of Plaintiff's work) submitted a notice to Whaleco alleging that the product listing infringed on a registered copyright; Whaleco promptly took it down; and the accused product remains delisted. These facts are not in dispute.

**B. The Parties' Discovery Efforts**

Since the filing of the Complaint, the parties have exchanged initial disclosures and discovery requests, including interrogatory responses. In fact, Whaleco already responded to the

pertinent interrogatories by confirming Whaleco does not sell the accused product and a third-party seller list product. After Whaleco filed its motion for summary judgment, Plaintiff sent a letter on December 13, 2023, supposedly outlining deficiencies in Defendants' discovery responses. Plaintiff's counsel identified 33 out of the 54 document requests and 6 out of 18 interrogatories as "relevant" to issues raised by Whaleco's motion for summary judgment.[2] Plaintiff's letter offered no reasoning for why the identified requests were necessary to respond to Whaleco's motion, only reciting the legal standards under the DMCA and listing irrelevant and disproportionately broad discovery requests. *See* ECF No. 60-1, Ex. 3. Plaintiff's motion fails to mention (and instead buries in an attorney declaration) that Whaleco sent a detailed response to Plaintiff's discovery letter on December 30, 2023. *See* ECF No. 60-1, Ex. 4. The response explained why the discovery Plaintiff seeks either (i) has already been provided before or with the summary judgment motion; (ii) has no relevance to the summary judgment issues; and/or (iii) does not exist because Plaintiff fundamentally misunderstands Whaleco's business model, as he seeks information on the design and manufacturing of the accused product (activities done by third-party sellers). *Id.*

Before filing of this Rule 56(d) motion, Plaintiff's counsel contacted Defendants' counsel to set up a meet and confer. Defendants' counsel agreed to meet and confer on January 5, 2024. ECF No. 67-1 at ¶¶ 4, 6. The night before the scheduled meet and confer, Plaintiff filed this motion without conferring with Defendants as required by Local Rule 37.2.

## II. LEGAL STANDARD

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for

---

[2] In that same letter, Plaintiff's counsel failed to identify a single request for production or interrogatory to PDD that bears on Whaleco's motion for summary judgment and only vaguely claimed "discovery from PDD may implicate the issues raised by Whale[c]o's Motions for Summary Judgment." *See* ECF No. 60 -1 Austermuehle Decl., Ex. 3 at 4.

specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The nonmovant—here, Plaintiff—bears the burden to establish entitlement to relief under Rule 56(d). *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014). A Rule 56(d) motion must provide a "compelling argument why discovery should be continued," *Twin City Fire Ins. Co. v. Vonachen Servs., Inc.*, 567 F. Supp. 3d 979, 993 (C.D. Ill. 2021), based on a proffering of "*sufficient facts* to show that the evidence sought *exists*, and that it would prevent summary judgment." *Chance v. Pac–Tel Teletrac Inc.*, 242 F.3d 1151, 1161 (9th Cir. 2001) (emphases added).

## III. ARGUMENT

### A. Plaintiff Fails to Identify Any Basis for Pursuing Discovery that Whaleco Actively and Deliberately Participated in the Infringing Listing

Plaintiff's direct copyright infringement claim clearly fails as a matter of law. An online platform through which third parties publish or sell (such as Amazon, YouTube, or Temu) is not liable for direct infringement unless they actively and deliberately participated in the infringement. *See* ECF No. 42 at 8; *see also Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-cv-3610, 2022 U.S. Dist. LEXIS 50166, at *7–8 (S.D.N.Y. Mar. 21, 2022) ("In the context of online platforms that host content uploaded or transmitted by third-party users, a platform cannot be liable for direct copyright infringement based on the allegedly infringing activities of its users unless the platform had some *deliberate role* in the alleged infringement, such that the platform morphed from a passive provider of a space in which infringing activities happened to occur to an *active participant* in the process of copyright infringement.") (internal quotation marks omitted) (emphasis added).

To support this claim in the Complaint, Plaintiff first alleges that "Temu offers a variety of products for sale" and "Temu controls the products sold" on Temu, but these allegations are not

supported by anything apart from conclusory allegations made "on information and belief." ECF No. 1 at ¶¶ 25–27. Notably, Plaintiff does not mention that Whaleco rebutted this statement in Response to Interrogatory No. 5 and explained that Whaleco has not made, used, offered for sale, or sold any product containing the Work. The undisputed reality is Whaleco does not sell products on Temu, only third-party sellers do. Indeed, the binding agreements between Whaleco and the sellers confirm these facts: (a) the SSA, (b) Notice for Using the Material Editing Tools, and (c) Terms of Use. *See* ECF No. 43-2, Exs. 1-3. These terms (signed by all sellers, including the seller of the accused product) provide that all sellers will only list non-infringing goods and content; the sellers (not Whaleco) are responsible for the product listing content; and Whaleco never takes title of the goods, which flows from sellers to buyers.[3] ECF No. 42 at 3; ECF No. 43-2 at ¶¶ 11, 16.

Facing clear defeat on this claim for want of any facts supporting direct infringement—*i.e.*, "deliberate" and "active" participation in the alleged infringement—Plaintiff claims in her Rule 56(d) motion that six broad categories of discovery can get her there. ECF No. 60 at 10 (listing six categories). Plaintiff is wrong. As an initial matter, each of the categories relate almost exclusively to the DMCA safe harbor elements, not Plaintiff's direct infringement allegations. While an online platform provider has immunity if it complies with the DMCA requirements, allegations of non-compliance with the DMCA safe harbor does not create direct infringement liability in the absence of deliberate and active participation in the infringement. *See Bus. Casual Holdings*, 2022 U.S. Dist. LEXIS 50166, at *13–14 ("[W]hether YouTube is prevented from taking advantage of a DMCA safe harbor because it has failed to comply with the DMCA's repeat infringer provision is

[3] Moreover, by exposing Whaleco to onerous and burdensome discovery (likely orchestrated by Temu's competitor Shein), plaintiff seeks to undermine the spirit of the DMCA safe harbor protections which protects service providers from litigation for third-party acts of alleged infringement.

immaterial here because [plaintiff] has not pleaded a plausible claim of direct copyright infringement [*i.e.*, 'active, volitional conduct,' against YouTube]."). Thus, nearly all of Plaintiff's Rule 56(d) motion is irrelevant to whether discovery could be obtained to establish direct infringement against Whaleco (as it mainly focuses on how Whaleco deals with alleged infringement in relation to the ~80 million product listings on Temu,[4] not the active or deliberate involvement in the alleged infringement at issue).

To the extent Plaintiff's request for more discovery covers only Whaleco's alleged involvement in designing, manufacturing, or listing the accused product—Plaintiff is seeking something that does not exist.[5] Whaleco is in the position of having to "prove a negative," and it has provided the only evidence bearing on these topics: the contracts and terms between Whaleco and third-party sellers confirming that the sellers (not Whaleco) make, sell, and list the products. *See* ECF No. 43-2, Exs. 1-3. Whaleco does not have evidence, for example, that it did not design and make the accused product, *because Whaleco did not design and make the accused product*.

This case is similar to *Sliger v. AG Sols. Grp., LLC*, which involved an early summary judgment (before any discovery) on the grounds that certain defendants were not the manufacturer of the product that harmed the plaintiff, and thus, were entitled to immunity. No. 8:22-cv-006, 2022 U.S. Dist. LEXIS 245244, at *5–6 (D. Neb. June 17, 2022). Like Whaleco, the defendants' summary judgment motion included declarations making clear they did not manufacture the product—setting up a clear defense—and the plaintiff moved under Rule 56(d) asking for

---

[4] ECF No. 60 at 10 (seeking discovery on "vetting process before sellers can sell infringing products," "financial benefit due to infringing activity," "general knowledge of the infringing activity on its platform").

[5] That Whaleco provides neutral listing and logistical services (like Amazon's fulfillment services) does not make Whaleco a deliberate and active participant in infringing conduct. *See Milo & Gabby, LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 890 (Fed. Cir. 2017) ("Because the third-party sellers retain title to the pillowcases at all times and Amazon, as relevant to this case, merely provides an online marketplace followed by logistical and shipping services after the third-party seller has completed its transaction with a buyer, Amazon is not a seller in this case for the purposes of copyright infringement[.]").

depositions of the declarants, broad 30(b)(6) depositions, and broad written discovery, all in the hopes of finding counter-facts that the defendants did in fact manufacture the product. The court rightly denied the Rule 56(d) motion on the grounds that the plaintiff's only basis for believing defendants manufactured the product was her own "conclusory" allegation, and thus, "[p]laintiff's failure to show that the facts she seeks exist suggests that what she is seeking in her Rule 56(d) Motion is a prohibited 'fishing expedition.'" *Id*. at *8-9.

The same should occur here. Plaintiff has provided no basis to believe that Whaleco designed, made, or listed the product on Temu, or other facts that would suggest Whaleco's deliberate and active involvement. Plaintiff's Rule 56(d) motion should thus be denied to the extent it relates to seeking discovery on establishing direct copyright infringement.

### B. Plaintiff Fails to Identify Any Basis for Pursuing Discovery on DMCA Safe Harbor Defense

#### 1. Plaintiff Fails to Explain What Probable Facts Are Not Available

Plaintiff's Rule 56(d) motion fails to identify any "specified reasons" why it "cannot present facts *essential* to justify its opposition," Fed. R. Civ. P. 56(d), including failing to identify what evidence the requested discovery would establish. Plaintiff first recites the legal standard for DMCA safe harbor and requests disproportionately broad categories of documents and deposition topics in the *hope* of prolonging the case.

First, Plaintiff does not identify, as she must, what specific facts will be uncovered if the Court permits discovery into any of the six topics identified in her motion, ECF No. 60 at 10 (six topics), or how those facts would prevent summary judgment. Plaintiff's failure shows her requests for broad discovery are nothing more than a fishing expedition in the face of a straightforward defense accorded to online platforms such as Temu. *See Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) ("The affidavit does not identify any specific facts [plaintiff]

sought to uncover or how it will rebut the [defendant's] motion for summary judgment. The affidavit merely recites the [relevant] legal standards [] and the need for general evidence to support its claim.").

Next, Plaintiff claims she is entitled to depositions to test the veracity of Whaleco's sworn declarations, but Plaintiff provides no basis for doubting the undisputed facts and evidence in the declarations. Plaintiff cannot obtain discovery under Rule 56(d) by simply questioning the general veracity of declarants. *See U.S. v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1294–95 (7th Cir. 1990) ("Claimant never specified to the district court, nor does it identify on appeal, any information it realistically hopes to gain by deposing these adverse witnesses."); *Sliger*, 2022 U.S. Dist. LEXIS 245244, at *14 (rejecting deposition of summary judgment declarant to test general veracity; noting that "there is no likelihood that a deposition of their affiant will produce different information from what is in his affidavit however 'sternly' Plaintiff's counsel looks at the affiant while asking him about manufacturing the trailer and/or the wheel").

The Seventh Circuit addressed this issue and rejected the same arguments in *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 885 (7th Cir. 2005). There, plaintiffs obtained a mortgage on their home and, after paying off the mortgage three years later, were assessed $12,000 in penalties pursuant to a five-year prepayment penalty rider. Plaintiff sued the mortgagee, claiming that the parties agreed to a 24-month prepayment penalty rider. The defendant promptly moved for summary judgment after exchanging initial disclosures. Plaintiffs sought additional discovery under Rule 56(f) (the former rule), claiming that the parties had not conducted discovery. Plaintiffs also asserted that they were entitled to depose the defendants' employees and agents that worked with their loan file but failed to set forth "specific evidence which they might have obtained from these depositions." *Id.* at 885. The district court denied plaintiffs' motion and granted summary

judgment to the defendant. The Seventh Circuit affirmed. Although the parties only exchanged initial disclosures, the Court found that no additional discovery was needed to rule on the defendant's motion. And plaintiffs could not satisfy their burden under Rule 56(f) by offering baseless, unsupported claims with the hope of finding something in discovery. Nor could plaintiffs depose witnesses with the hope that they would contradict their summary judgment declarations. The Court concluded:

> [Plaintiffs] desire to now depose the [defendants'] officials that had authority over their loan . . . is also an insufficient reason for this court to hold that the district court abused its discretion. Both [witnesses] stated via affidavit that [Plaintiffs'] loan file did not contain either a signed or unsigned two-year prepayment penalty addendum and the depositions sought would be solely for purposes of casting doubt on the affiants' credibility and to reach the unlikely possibility . . . [that] an adverse witness may contradict an earlier statement or volunteer an admission. . . . However, this is not a valid reason for a court to grant a motion for a continuance to conduct additional discovery.

*Id.* at 886 (citation omitted). Like *Davis*, this Court should reject Plaintiff's improper efforts to stave off summary judgment by offering speculative claims and unsupported attempts, without any specifically articulated basis, to question the veracity of Whaleco's sworn declarations.

**2. Plaintiff Mischaracterizes the Record to Try to Justify Rule 56(d) Discovery into Whaleco's Status as a DMCA Service Provider**

Unable to carry her burden on Rule 56(d), Plaintiff takes to mischaracterizing and misapplying the record and case law relating to the applicability of the safe harbor to justify unbounded discovery. First, Plaintiff relies only on its own unsupported allegations in the Complaint—mostly "on information and belief"—to justify discovery into Whaleco's status as a service provider. ECF No. 60 at 8. This is insufficient under Rule 56(d). *See Twin City*, 567 F. Supp. 3d at 992 ("mere speculation" insufficient to support additional discovery); *Sliger*, 2022

U.S. Dist. LEXIS 245244, at *8 ("conclusory" allegations in complaint insufficient against "uncontroverted" declaration).

Moreover, these allegations that supposedly require discovery are either irrelevant to Whaleco's safe harbor arguments as a matter of law or are rebutted by sworn testimony and exhibits. For example, Plaintiff cites her allegation that Whaleco "knows that sellers are offering infringing products on the Temu platform" and is a "false marketplace." ECF No. 60 at 8. But generalized knowledge that infringing products may occasionally be posted on a marketplace does not deprive the marketplace of safe harbor protection. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1023 (9th Cir. 2013) (no genuine issues of material fact in part because "general knowledge that [the service provider] hosted copyrightable material and that its services could be used for infringement is insufficient to constitute a red flag."); *see also U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 939-40 (9th Cir. 2002) (affirming summary judgment; noting district court's denial of request for additional discovery was proper because nonmovant's position was not possible as a matter of law).

Plaintiff next relies on its allegations that Whaleco "fails to actively police the platform for infringing products," and "Temu fails to monitor and investigate these sellers to reliably determine whether they have and continue to infringe." ECF No. 60 at 8. But it is Plaintiff's (and other copyright holders') burden to police her copyrights, not a marketplace's like Whaleco. *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 603 (9th Cir. 2018) ("The [DMCA] places the burden of policing copyright infringement on the copyright owner, not on the person or firm storing and hosting the material."). Thus, these general allegations are also irrelevant as a matter of law.

Plaintiff then misstates both the legal standard under the DMCA and the key facts submitted in Whaleco's summary judgment motion. First, Plaintiff claims "Whaleco conceded that

'Temu conducts a cursory pre-listing screening.'" ECF No. 60 at 9. But Plaintiff ignores that Whaleco already explained the scope of this pre-listing screening, ECF No. 43 at ¶¶ 16–17, 20, and it is the type of pre-listing screening that is legally insufficient to deny Whaleco the benefits of safe harbor protection. *BWP Media USA, Inc. v. Clarity Digit. Grp., LLC*, 820 F.3d 1175, 1181 (10th Cir. 2016) ("[I]f the infringing content has merely gone through a screening or automated process, the ISP will generally benefit from the safe harbor's protection").

Plaintiff next contends that Whaleco's use of its shipping partner, Yucan, and fulfillment services show it has "discoverable information that would shed light on the scope and extent of its role in the sale of the Infringing Products." ECF No. 60 at 9–10. Whaleco does not deny its affiliated company offers fulfillment services to third-party sellers. ECF No. 43 at ¶¶ 13-14. But Whaleco follows acceptable marketplace practices that other service providers, like Amazon utilize, and ***never takes title to the goods***. ECF 43-2 at ¶¶ 3, 16. Fulfillment services to temporarily store and then ship to customers falls squarely within the activities permitted for service providers and would not deprive Whaleco of the safe harbor protection. *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. 13-cv-1932, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16, 2015) (rejecting contention that Amazon is liable for infringement because third-party sellers retain full title of the inventory sold even though Amazon held the product for a time in its "warehouse for storage and Amazon boxed up and shipped the product when a sale was consummated on the website").

Lastly, Plaintiff's reliance on *H-D U.S.A., LLC v. SunFrog, LLC*, 282 F. Supp. 3d 1055 (E.D. Wis. 2017) is misplaced. In *SunFrog*, users could create counterfeit goods and select infringing designs created by other users, which were stored on SunFrog's art database. *Id.* at 1057. SunFrog printed the design and shipped it. *Id.* Nothing in the facts suggested that SunFrog performed any type of screening and it actively facilitated the infringement by printing, *i.e.*,

*creating*, the infringing products (thereby operating the entire production line from creation to shipping). This is a far cry from the cursory (and industry standard) pre-listing screening Whaleco performs for obvious infringement and offensive content and Yucan storing and shipping products curated and created by third-party sellers. ECF No. 43 at ¶¶ 13–14, 16–17, 20.

**3. Discovery into Whaleco's DMCA Compliance Is Also Futile**

Plaintiff asserts that summary judgment is "premature given that Plaintiff has not yet been allowed to conduct discovery into Whaleco's compliance with the DMCA." ECF No. 60 at 10. Plaintiff relies on *Seide v. Level-(1) Glob. Sols., LLC*, No. 16 C 2975, 2016 U.S. Dist. LEXIS 105375 (N.D. Ill. Aug. 10, 2016). *Seide* was a different procedural posture. There, the Court denied a motion to dismiss under 12(c) because it could not make findings regarding Steadfast's repeat infringer policy based on the pleadings alone. *Seide*, 2016 U.S. Dist. LEXIS 105375 at *13–15. Here, Whaleco has provided sworn testimony and relevant policies that establish Whaleco has reasonably implemented its repeat infringer policy. ECF No. 43 at ¶¶ 25–27. Plaintiff fails to explain her basis for purporting to counter these facts in discovery apart from questioning the veracity of Whaleco's declarants. Next, Plaintiff claims she "should not be required to accept as true" Whaleco's sworn testimony that it removed the accused listing. It is unclear how this fact is relevant to Whaleco's repeat infringer policy. Regardless, there is no factual dispute that the accused listing was promptly removed. Whaleco's declarant testified under penalty of perjury that the listing was removed, and Plaintiff has not shown otherwise. ECF No. 43-1 at ¶ 9.

Plaintiff also claims that the "number of takedown notices" received by Whaleco shows awareness of infringement on its platform. But not only is "generalized knowledge of infringement" insufficient, the majority of the DMCA takedown requests are sent by Shein, just like the one in this case. Between January to July 2023, Shein sent over 28,000 DMCA takedown requests to Temu (over 50% of the total number of takedown requests received during this time

platform-wide). ECF No. 43 ¶ 34. For likely thousands of those, Shein lacked the authority to send the notice in the first place.[6]

#### 4. The Prior Shein Litigation Fails to Warrant Rule 56(d) Discovery

Perhaps realizing her inability to properly support her Rule 56(d) motion, Plaintiff points to a TRO issued in a separate action brought by Shein. *Roadget Bus. PTE. LTD v. PDD Holdings Inc.*, No. 1:22-cv-07119, 2023 U.S. Dist. LEXIS 131974, at *29 (N.D. Ill. July 31, 2023). But that decision was "[b]ased on the low bar" assessed for the TRO relief and "based on the evidence before the [c]ourt," which consisted of Shein's inaccurate and demonstrably unreliable allegations (based on hearsay from media articles and out-of-context citations to websites). *Id.* at *25, n.5, 29. Shein's speculative assertions were rebutted by Whaleco in its opposition to Shein's later-filed second motion for a preliminary injunction. No. 1:22-cv-07119, ECF No. 111 (Aug. 14, 2023). Once all the shortcomings in Shein's allegations were uncovered and presented, Shein voluntarily dismissed the case without even completing the preliminary injunction briefing, abandoning the TRO. *Id.* at ECF No. 201 (Oct. 26, 2023). This proceeding has no relevance.

### C. Proportionality Also Warrants No Rule 56(d) Discovery

Rule 26(b)(1) confirms that discovery must be "proportional to the needs of the case" considering, *inter alia*, "the amount in controversy" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Importantly, the Rule 26(b)(1) proportionality standard, as with all discovery motions, is inherently considered as part of a Rule 56(d) motion. *See Viehweg v. Sirius XM Radio, Inc.*, No. 17-cv-3140, 2019 U.S. Dist. LEXIS 7568, at *3–4 (C.D. Ill. Jan. 16, 2019) (considering proportionality on Rule 56(d) motion).

---

[6] Shein's DMCA harassment campaign against Temu is the subject of a separate lawsuit and a pending preliminary injunction motion against Shein. *See Whaleco Inc. v. Shein Technology LLC et al.*, No. 1:23-cv-03706(TJK) (D.D.C Dec. 13, 2023).

Here, the "amount in controversy" is negligible, as there were only two sales. Nevertheless, the extent of discovery Plaintiff seeks ostensibly targeting Whaleco's DMCA compliance is remarkable and grossly disproportionate. Plaintiff's supplemental document requests seek virtually every document that relates in any way to the Temu platform.[7] This, plus the 30(b)(6) depositions that encompass 31 broad topics covering virtually every aspect of the Temu platform, is disproportionate to the needs of this case. A single product listing (with only two sales) should not open the door to such breadth of DMCA related discovery. *See Davis v. Pinterest, Inc.*, No. 19-cv-07650, 2021 U.S. Dist. LEXIS 137030, at *22 (C.D. Cal. July 20, 2021) (declining to compel "all documents" regarding Pinterest's DMCA compliance as likely overbroad and unduly burdensome; questioning whether "[a]ll documents about any such actions…are proportional to the needs of the case"). A proportional amount of discovery is precisely what Whaleco has provided: detailed sworn declarations; policies, terms, and conditions that detail the relationship between Whaleco and third-party sellers; and Whaleco's policies for complying with the DMCA.

## IV. <u>CONCLUSION</u>

For the reasons and authorities above, Plaintiff's Rule 56(d) motion should be denied.

---

[7] *See, e.g.,* **No. 55**: "All documents relating to Temu's 'product posting process' for sellers[.]" **No. 56**: "All documents relating to Temu's policies and procedures for conducting a 'cursory pre-listing screening' of product information on its platform, including its 'flagging' of products as infringing during that screening." **No. 57**: "All documents relating to Temu's policies and procedures for sellers to 'push' a listing 'live' on Temu's platform[.]" **No. 58**: "All documents relating to Temu's policies and procedures for sellers to update the levels of product inventory on Temu's platform[.]" **No. 59**: "All documents relating to Temu's policies and procedures for sellers to send products to be temporarily stored in fulfillment warehouses before shipment to consumers[.]" **No. 60**: "All documents relating to the 'marketplace services' that Temu provides sellers on its platform[], including any manufacturing, production, sourcing, logistics, shipping, or fulfillment services Temu provides such sellers." **No. 61**: "All documents relating to Temu's policies and procedures for indicating price ranges to sellers on its platform[.]" **No. 62**: "All documents relating to Temu's policies and procedures for managing and processing returns of products sold on its platform[.]" **No. 66**: "All documents relating to Temu's policies and procedures for selecting or approving third-party sellers on its platform." **No. 67**: "All documents relating to any subsidiaries or affiliates of WhaleCo or PDD offering products for sale on Temu's platform[.]"

Dated: January 23, 2024

Respectfully submitted,

*/s/ Anna Naydonov*

Anna B. Naydonov (*pro hac vice*)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202)-626-3600
Anna.Naydonov@whitecase.com

Andy LeGolvan (*pro hac vice*)
WHITE & CASE LLP
555 South Flower Street
Suite 2700
Los Angeles, CA 90071
(213) 620-7700
Andy.legolvan@whitecase.com

Thomas M. Cull (Illinois Bar No. 6331606)
WHITE & CASE LLP
111 S. Wacker Dr.
Suite 5100
Chicago, IL 60606
(773) 330-9427
Thomas.Cull@whitecase.com

Garret A. Leach, P.C. (Illinois Bar No. 6237520)
Brian A. Verbus (Illinois Bar No. 6314193)
Sarah M. Craig (Illinois Bar No. 6326757)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
garret.leach@kirkland.com
brian.verbus@kirkland.com
sarah.craig@kirkland.com

*Counsel for Defendants Whaleco Inc. and PDD Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2024, a copy of *Defendant Whaleco's Opposition to Plaintiff's Rule 56(d) Motion to Take Discovery* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Anna Naydonov*
Anna Naydonov